UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANN A. LEE | CIVIL ACTION |
| VERSUS | No. 11-570 |
| HARRAH'S NEW ORLEANS | SECTION "C" (3) |

**ORDER AND REASONS**[1]

Before the Court is the motion of defendant Harrah's New Orleans ("Harrah's") for summary judgment. Rec. Doc. 53. Plaintiff Ann A. Lee ("Lee") opposes the motion, in part. Rec. Doc. 86. Defendant filed a reply memorandum. Rec. Doc. 103. Having considered the record, the memoranda of counsel, and the law, the Court PARTIALLY DENIES and PARTIALLY GRANTS the motion for the following reasons.

**I. BACKGROUND**

The following factual and procedural background relates only to the disputed Americans with Disabilities Act ("ADA") claim for failure to accommodate a disability and not to the withdrawn harassment claim discussed in more detail below. Beginning in 2009, the plaintiff Ann A. Lee has a history of severe back pain and has been diagnosed with fibromyalgia. Rec. Doc. 53-3 at 9-18; Rec. Doc. 53-20 at 121. Harrah's New Orleans is a casino operating in downtown New Orleans, Louisiana. Rec. Doc. 53-3 at 1. In 2010, Ann A. Lee worked at Harrah's as one of its Table Games Supervisor. *Id.* Table Games Supervisors were generally

---

[1] Nicholas Roosevelt, a second-year student at Northwestern University School of Law, assisted in preparing this Order and Reasons.

scheduled and assigned to supervise different types of table games in the various "pits" on a daily basis. *Id.* at 3. An official Table Games Supervisor job description states that Supervisors "must be able to bend, reach, kneel, twist and grip items as necessary." Rec. Doc. 70-3 at 25. All Table Games Supervisor duties were standing assignments, with the exception of the "box person" assignment at craps tables (also referred to as "boxperson"). *Id.* at 5.

The parties agree that the seated box person assignment had certain physical requirements, but dispute the extent to which those requirements differed from the general requirements of a Table Games Supervisor. Rec. Doc. 53-3 at 5; Rec. Doc. 86-1 at 4. Harrah's asserts the same physical requirements apply to all duties of a general Table Games Supervisor, including the box person. Rec. Doc. 53-3 at 4. Lee asserts the physical requirements were significantly less-demanding and that she was physically able to perform the duties of a full-time seated box person. Rec. Doc. 86-1 at 2-3. Lee supports this assertion with the declaration of Richard Almon, a former employee at Harrah's that worked exclusively as a box person due to his inability to stand for long periods of time. Rec. Doc. 87-4 at 22-23. Harrah's has presented the deposition of its Assistant Casino Manager, Noble Scott, that states that box persons were required to reach across the game table, grab items on the table, and twist in their seat. Rec. Doc. 53-2 at 7 (citing Rec. Doc. 53-23 at 15). Two Harrah's employee manuals regarding craps apparently conflict with Scott's statements by stating the box person was prohibited from reaching across the table. Rec. Doc. 87-4 (Sealed Exh. 7, 8).

The parties do not dispute that on January 8, 2010, Lee returned to work after having been suspended pending an investigation into an unexcused absence. Rec. Doc. 53-3 at 13. On that date, Lee provided her supervisor with a January 7, 2010 doctor's note that stated: "light

2

duty; no standing/climbing/lifting. Seated work only." *Id*. (citing Rec. Doc. 53-26 at 16). That same day, Lee's supervisor Charles Carter communicated internally that he planned to follow up on Lee's condition, noting "she has not provided any medical documentation yet to indicate that she has an ADA qualifying condition." Rec. Doc. 53-3 at 14.

There is also no dispute that on February 11, 2010, Lee met with Carter to discuss her need for a seated position and presented a note from a different doctor that appears to have roughly reiterated the instructions in the January 8 note. Rec. Doc. 53-3 at 14; Rec. Doc. 86-1 at 6. The parties agree that Carter provided Lee with ADA paperwork to complete at this February 11, 2010 meeting. Rec. Doc. 53-3 at 14. The parties generally agree that between February 11 and August 15, 2010, Lee worked as a seated box person. Rec. Doc. 53-3 at 15. The parties dispute the extent to which Lee occasionally would have to stand while covering for co-workers in different pits. Rec. Doc. 53-3 at 15; Rec. Doc. 103 at 7-8; Rec. Doc. 86-1 at 6-7.

The parties also agree that Lee had a physician complete the ADA paperwork Carter had provided her with and submitted it to Carter on March 4, 2010. Rec. Doc. 53-3 at 16. The paperwork indicated that Lee's condition entailed "upper and lower extremity limitations" and that she was "unable to bend, reach, kneel, twist or grab items" and may "suffer with extended standing as well." *Id.* The parties dispute the extent to which Carter and Lee discussed possible accommodations between February 11 and August 15, 2010. Rec. Doc. 53-3 at 15; Rec. Doc. 86-1 at 7. Harrah's cites Carter's deposition to argue that at some point after March 4, 2010, Lee was verbally informed that Harrah's could not accommodate her physical limitations, because "even the seated boxperson assignment required Lee to perform physical duties in contravention to [the doctor's] restrictions." Rec. Doc. 53-3 at 17 (citing Rec. Doc. 53-19). Carter testified that

he and Lee verbally discussed other positions within the casino. *Id.* Lee denies that she was ever verbally informed that she could not be accommodated or that she ever discussed other positions with Carter. Rec. Doc. 86-1 at 7. Lee agrees that she never applied for any other positions within the casino, but asserts that this is because she thought she would be accommodated with the seated box person position. *Id.* at 8.

It is also undisputed that in mid-June 2010, an employee of Harrah's, Vu Nguyen, resigned from a full-time box person position that he had worked in as a result of limitations on his ability to stand. Rec. Doc. 103 at 10; Rec. Doc. 86 at 20. On June 22, 2010, Lee provided Carter with Family Medical Leave Act ("FMLA") papers that stated "no standing, no lifting, limited bending and twisting," with no listed restrictions on kneeling, reaching, grabbing, and gripping. Rec. Doc. 86-1 at 8. Lee asserts Harrah's did not follow up on this information. *Id.* Harrah's asserts the FMLA paperwork was not submitted for ADA purposes. Rec. Doc. 103 at 5.

Lee returned to work in August 2010 after taking much of June and July off on FMLA and bereavement leave. Rec. Doc. 53-3 at 18. Lee was not exclusively assigned to the box person assignment, but Harrah's points to the deposition of the Director of Table Games during that period, Tosha Tousant, that states "what we said that we would do is we would try to make sure that we schedule her as often as possible without us coming across as showing favoritism to the overall team, because this was not something that was considered ADA and/or workmen's comp." Rec. Doc. 53-5 at 5. On August 13-15, Lee had been scheduled to standing assignments, but she switched to the box person assignment. Rec. Doc. 53-3 at 18-19.

The parties do not dispute that on August 16, 2010, Lee reported for work, was assigned

to a standing position, and shortly thereafter left because she was experiencing both physical pain and anxiety. Rec. Doc. 53-3 at 19; Rec. Doc. 70-1 at 301. Harrah's asserts that Lee had FMLA intermittent leave available for use on that day, but did not use it, and apparently questions Lee's pain by noting that she had earlier walked to Employee Relations to request and complete an application for a Board of Review hearing regarding certain strategy tests Lee had not taken. Rec. Doc. 53-3 at 19. August 16, 2010, was the last day Lee reported for work at Harrah's. Rec. Doc. 53-3 at 19.

Lee used FMLA leave and was granted extended unpaid medical leave before Harrah's terminated Lee's employment in November 2011. *Id.* at 21. During that period, Lee filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 18, 2010. *Id.* Lee obtained a right-to-sue letter No. 461-2010-011915 from the EEOC on December 13, 2010. Rec. Doc. 70-1 at 705. Lee filed a complaint in this Court on March 14, 2011, alleging that Harrah's violated the ADA. Rec. Doc. 1. On July 24, 2011, Lee filed an amended complaint, which supplemented her ADA claim with alternative allegations of racial and retaliatory harassment in violation of 42 U.S.C. § 1981. Rec. Doc. 3.

In September 2011, Lee applied for Social Security Disability Insurance ("SSDI") and her application was approved two months later. Rec. Doc. 53-22. The application represents that Lee's medical conditions caused her to change her work activity beginning January 6, 2010, and that she stopped working because of her conditions on August 16, 2010. *Id.* at 5. The application represented that Lee was required to stand up and supervise dealers on the casino floor. *Id.* at 7, 12.

## II. ARGUMENTS OF THE PARTIES

In her memorandum opposing Harrah's motion for summary judgment, Lee withdraws and does not oppose summary judgment on her harassment claim under §1981. Rec. Doc. 86 at 1. The Court therefore grants summary judgment on the §1981 harassment claim and only addresses her ADA reasonable accommodation claim below. For the ADA claim, Harrah's argues that summary judgment should be granted, because (1) Lee was not disabled under the ADA, (2) Lee was not qualified for her job with or without a reasonable accommodation, and (3) even if Lee was qualified, Harrah's provided reasonable accommodation and did not discriminate against Lee. Rec. Doc. 53-2 at 4-14. Harrah's further argues that, by successfully filing for Social Security Disability Insurance, Lee's claim is barred by judicial estoppel. *Id.* at 8-9. Finally, Harrah's argues that, even if its motion for summary judgment is denied, Lee should not be able to recover punitive damages. *Id.* at 23.

Lee counters that she was disabled under the ADA and was capable of working with the requested reasonable accommodation of being assigned to work as a box person. Rec. Doc. 86 at 6-7. Lee asserts that Harrah's did not engage in an interactive dialogue with Lee regarding her requested accommodation, as required by the ADA. *Id.* at 20. By assigning her to standing assignments after having provided her with the accommodation of being assigned as a box person, Lee argues that Harrah's violated the ADA. *Id.* at 5-10. Lee further argues that her claim is not barred by judicial estoppel, because she filed for Disability Insurance benefits over a year after her final day of work at Harrah's and only claimed that she was unqualified to work as a Table Games Supervisor after August 16, 2010. *Id.* at 11. Finally, Lee argues that punitive damages are warranted on her reasonable accommodation claim. *Id.* at 22-23.

### III. LAW AND ANALYSIS

**A. Standard of Review for Harrah's Motion for Summary Judgment**

A motion for summary judgment will be granted if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Griffin v. United Parcel Service, Inc.* 661 F.3d 216, 221 (5th Cir. 2011). A court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001). A court does not weigh the evidence in the record or assess the credibility of witnesses. *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

**B. Elements of an ADA Claim**

The ADA prohibits certain employers from discriminating against a qualified individual on the basis of her disability. 42 U.S.C. §§ 12102 *et seq.* (2008). The disputed conduct of the parties occurred on or after January 1, 2009, therefore the ADA as amended in 2008 applies. Pub.L. No. 110-325, § 8,122 Stat. 3553 (2008). Most recent Fifth Circuit cases have applied pre-amendment standards, because the conduct in dispute occurred before the amendment's effective date. *Mann v. La. High Sch. Athletic Ass'n*, 2013 WL 3475116, *4, n. 1 (5th Cir. Jul. 11, 2013) (per curiam) (not selected for publication). To prevail on her ADA claim, Lee must establish three elements: 1) she has a disability; 2) she is qualified for the position in which she seeks employment; and 3) she was discriminated against by an employer because of her disability.

*Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 222 (5th Cir. 2011). Harrah's argues that Lee has not established any of these three elements, so the Court considers each in turn.

**1. Disability**

A disability is a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §12102(1)(A) (2008). "Major life activities" include caring for oneself, standing, lifting, and bending. 42 U.S.C. §12102(2)(A). The definition of disability "shall be construed in favor of broad coverage of individuals under this chapter." 42 U.S.C. §12102(4)(A). The 2008 ADA amendments found that the EEOC regulatory definition of "substantially limits" expressed too high a standard. *See* Pub.L No. 110-325, § 2(a)(8). Revised at the direction of the 2008 amendments, relevant regulations now state that the primary focus of attention in ADA cases should be whether an employer has complied with its obligations, not whether an impairment "substantially limits" a major life activity. 29 C.F.R. § 1630.2(j)(1)(iii) (2011). Acknowledging that the 2008 amendments lowered the standard that a plaintiff must meet to show a disability, a plaintiff is still required to show substantial limitation. *Mann,* 2013 WL 3475116, *4, n. 1.

Lee's doctors notes and history of back pain indicate a substantial limitation at least on her ability to stand that persisted throughout 2010. Rec. Doc. 53-3 at 9-16. This activity is explicitly listed in the ADA definition of major life activity. Particularly in light of the 2008 amendments, summary judgment on the disability element of Lee's ADA claim is inappropriate.

**2. Qualified to Perform the Job**

Harrah's contends that, even if Lee was disabled, she was unable to perform the essential functions of her job with or without accommodation. Rec. Doc. 53-2 at 4-8. The ADA states that "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2008). To establish that she is a qualified individual under Fifth Circuit precedent, Lee has to establish that she could perform the essential functions of a job with her disability or that a reasonable accommodation would have enabled her to perform the essential functions of the job. *Burch v. Nagodoches*, 174 F.3d 615, 619 (5th Cir. 1999). To assess the essential functions of a job, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Besides an employer's judgment and written descriptions, the EEOC regulations list additional factors for determining the essential functions of a job, including: "(iii) the amount of time that the employee spends performing the function; (iv) the consequences of allowing the employee not to perform the function; (v) past work experiences of persons holding the same position; (vi) the present work experiences of those holding similar positions; (vii) the current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3)(iii)-(vii). The plaintiff bears the burden of proof that she was qualified to perform the essential functions of the given job. *Griffin*, 661 F.3d at 224 (quoting *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

The parties do not apparently dispute that Lee was unable to perform her job without accommodation; however, a genuine dispute of material facts exists as to whether Lee was

9

qualified to perform the job with the reasonable accommodation of being assigned to the box person position. Harrah's argues that its official job description of the Table Games Supervisor should control and that any employee manuals that suggest box person duties were less-intensive were not in active use at the time of Lee's employment. Rec. Doc. 103 at 3-4. A court must consider an employer's judgment and written job descriptions; however, those considerations do not alone control. The court may also consider the experiences of past employees holding the position, such as the two former employees who worked as Table Games Supervisors assigned exclusively to the seated box position to accommodate their medical conditions. Harrah's argues that the medical conditions of those two employees differed from Lee's, which may well be true, but that does not change the largely undisputed fact that Lee was apparently able to and did work as a box person at least between February 11 and August 15, 2010. Rec. Doc. 103 at 8.The record is also unclear on how much time Lee was required to spend on the disputed essential functions that allegedly made Lee unqualified for the seat box person assignment. Rec. Doc. 53-3 at 5; Rec. Doc. 86-1 at 4. Harrah's has contended that a box person unable to bend, reach, kneel, twist, or grip would require Harrah's to provide additional personnel to perform the tasks; however, nothing in the record indicates that additional personnel were required to assist Lee while she worked as a box person between February 11 and August 15, 2010. *See* Rec. Doc. 53-2 at 7 (citing Exh. 5). Harrah's eliminated the box person assignment in the early summer of 2011, so the Court is unable to assess current work experiences of incumbents in the similar job. Rec. Doc. 53-2 at 7. The Court finds that there is a genuine issue of fact regarding Lee's ability or inability to perform the essential functions of her job.

**3. Discrimination**

Harrah's argues that it never discriminated against Lee, arguing it actually provided Lee with reasonable accommodation between February 11 and August 15, 2011. Rec. Doc. 103 at 8. An employer violates the ADA when it fails to accommodate the known limitations of an employee's disability. *Griffin,* 661 F.3d at 224. After a qualified individual with a disability makes a request for a reasonable accommodation, the employee and the employer should engage in "flexible, interactive discussions to determine the appropriate accommodation.'" *Id.* (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)). An employer violates the ADA, if its unwillingness to engage in such a good faith process leads to a failure to reasonably accommodate. *Id.* (quoting *Loulseged v. Akzo Nobel Inc.* 178 F.3d 731, 736 (5th Cir. 1999). The employer is not liable, however, if the plaintiff causes the break down in the informal and interactive process. *Id.* (internal quotation marks omitted).

In *Griffin*, a plaintiff mail worker requested a day-shift to accommodate his diabetes. 661 F.3d at 220-21. The Fifth Circuit affirmed the grant of summary judgment in part because the mail clerk had not shown that his employer had been unwilling to engage in a good-faith, interactive process with him to discuss his requested accommodation and the mail clerk ended that process by voluntarily retiring before any accommodations had been provided. *Id.* at 225. In *Agro Distrib.*, the defendant employer had provided the plaintiff truck driver with the reasonable accommodation of regular "cool off" breaks while he loaded barrels onto his truck and no evidence suggested the employer would not continue to do so. 555 F.3d at 466. The *Agro Distrib.* court affirmed the grant of summary judgment in part because the plaintiff quit after the employer refused to completely excuse the truck driver from loading activities. *Id.* at 471. The court noted that the truck driver could not benefit from any uncertainty of whether his employer

would have continued to sufficiently accommodate the truck driver with regular breaks. *Id.* at 472. In *Loulseged*, the court affirmed judgment as a matter of law where the plaintiff technician had requested an accommodation regarding lifting and carrying, but quit before ever being asked to perform those functions or being definitively informed that she would be required to perform those functions. 178 F.3d at 740.

 The Court finds these cases to be distinguishable from the present case. Here, the parties agree that the box person assignment was a reasonable accommodation, which Harrah's provisionally granted Lee while it reviewed Lee's ADA accommodation request. Rec. Doc. 103 at 4. What is less clear is whether an interactive process took place to determine the appropriate resolution of Lee's request. Unlike *Griffin and Louleseged,* there is a dispute over whether Lee was unwilling or caused a breakdown in the process of determining an appropriate accommodation. Unlike the plaintiff in *Agro Distrib.*, Lee did not stop working at a time when it was uncertain whether her employer intended to continue providing the accommodation and she might unduly benefit because of that uncertainty. Instead, Lee apparently stopped working only after Harrah's made clear it would not exclusively assign her to the seated box person position. Harrah's evidence that it participated in a good-faith, interactive process with Lee consists solely of the disputed statements made in the deposition of Lee's supervisor. Rec. Doc. 53 at 17; Rec. Doc. 86-1 at 7. Harrah's points to no other evidence indicating the nature of the interactive process between it and Lee or that Lee was ever officially informed that her accommodation request had been denied, much less why it was denied. The Court will not assess the credibility of the witnesses on summary judgment. *Cutrera*, 429 F.3d at 110.

Furthermore, it appears that—even after Lee was allegedly informed her request had been denied—she continued to work exclusively as a box person for at least a period of time and submitted a revised doctor's note that apparently made her able to meet the physical requirements of a box person. Rec. Doc. 86-1 at 8. Harrah's argument that this doctor's note was submitted for FMLA purposes, not ADA purposes, is unpersuasive and may inadvertently support the argument that Harrah's was unwilling to engage in a flexible and interactive process with Lee. A material factual dispute exists over whether an interactive and flexible process took place and whether, after providing Lee with a reasonable accommodation, Harrah's subsequently removed that accommodation.

## C. Judicial Estoppel

Harrah's argues that this Court should grant summary judgment on the grounds of judicial estoppel, because of Lee's SSDI application that states she was unable to meet the requirements of her job as a Table Games Supervisor. "A plaintiff must address the apparent inconsistency between [being] 'qualified' for employment under the ADA and [being] 'disabled' for SSDI benefits." *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005) (citing *Cleveland v. Policy Mgmt. Sys. Corp*, 526 U.S. 795, 798, 119 S.Ct. 1597, 1600 (1999)). The explanation of the inconsistency "must be 'sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential function of her job, with or without reasonable accommodation." *Id.* (internal quotation marks omitted). A plaintiff's explanation cannot simply be a disavowal of representations made in the SSDI application. *Id.* at 466. In *Cleveland*, the Supreme Court held that a plaintiff's explanation of inconsistent SSDI and ADA

13

claims was sufficient to merit a trial where the plaintiff explained that her SSDI accommodation did not factor in reasonable accommodations and her SSDI representations were accurate "in the time period in which they were made." 526 U.S. at 807. In contrast, the *McClaren* court found a plaintiff's explanation to be inadequate where it merely disavowed the truth of the conflicting representations that had been made. 420 F.3d at 465.

Here, Lee's SSDI application filed in September 2011 represented that she was totally disabled after August 16, 2010—her last day working at Harrah's. Rec. Doc. 53-22 at 5. By August 16, 2010, Harrah's was assigning Lee to standing positions indicating that it could have been reasonable for her to have listed the general Table Games Supervisor job requirements on her SSDI application. At least for the purposes of a summary judgment motion, this is a sufficient explanation to allow the parties the opportunity to present and contest their explanations at trial.

**D. Punitive Damages**

Harrah's argues that Lee is unable to recover punitive damages is appropriate even if this Court denies its motion for summary judgment. Rec. Doc. 53-2 at 23. A party alleging a violation of the ADA's reasonable accommodation provisions may recover compensatory and punitive damages. 42 U.S.C. § 1981a(a)(2) (1991). To recover punitive damages, a party must demonstrate that the employer failed to reasonably accommodate "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *George v. Entergy Servs., Inc*, 2011 WL 765790 at *9 (E.D.La 2011) (quoting

*Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535, 119 S.Ct. 2118, 2124 (1999)). A party may not recover punitive damages on a failure to reasonably accommodate claim if the employer demonstrates good faith efforts to consult, identify, and provide a reasonable accommodation. 42 U.S.C. § 1981a(a)(3).

For the same reasons stated above, there is a material dispute as to the intent of Harrah's during the period in question in this case. Likewise, there is a dispute over Harrah's willingness to engage in an interactive and flexible process with Lee to identify and provide reasonable accommodation. Summary judgment on this issue is therefore inappropriate. The Court will revisit this issue at trial.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment as to the plaintiff's ADA claim is DENIED. Rec. Doc. 53.

IT IS FURTHER ORDERED that defendant's motion for summary judgment as to the plaintiff's harassment claim is GRANTED as unopposed. Rec. Doc. 53; Rec. Doc. 86 at 1.

New Orleans, Louisiana, this 29th day of July, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**